IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO PORTS AUTHORITY, AIG INSURANCE COMPANY OF PUERTO RICO, INC., | CIVIL NO. 2013-1798 |
| PLAINTIFFS | IN ADMIRALTY |
| vs. | |
| ROYAL CARIBBEAN INTERNATIONAL, CARNIVAL CORPORATION & PLC, CONTINENTAL SHIPPING, INC., ASSURANSFÖRENING GARD, ABC, DEF, GHI & XYZ INSURANCE COMPANIES, JOHN DOE & RICHARD ROE | |
| DEFENDANTS | |

**COMPLAINT**

**TO THE HONORABLE COURT:**

Come now Plaintiffs, Puerto Rico Ports Authority, hereinafter PRPA, and its insurer, AIG Insurance Company of Puerto Rico, formerly known as Chartis Insurance Company of Puerto Rico, hereinafter AIG, through the undersigned attorney and respectfully submit their Complaint as follows:

**I.     JURISDICTIONAL ALLEGATIONS:**

1.1    This is an action of admiralty and maritime as hereinafter more fully appears within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

1

1.2   Jurisdiction is premised on 28 USCA § 1333 and 28 USCA § 1367 in that certain claims are so related to claims within the original jurisdiction of the Court that they form part of the same case or controversy.

1.3   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) (1) and (2) inasmuch as the Defendants are subject to personal jurisdiction within this district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

**II.   IDENTIFICATION OF THE PARTIES:**

2.1   That at all material times, Plaintiff PRPA, is a public corporation organized and existing in accordance with the laws of the Commonwealth of Puerto Rico, which owned Piers 3 and 4 of the Old San Juan Harbor where cruise ships regularly dock when they visit the port of San Juan.

2.2   That at all material times, Plaintiff AIG, formerly known as Chartis Insurance Company of Puerto Rico, is a corporation organized and existing in accordance with the laws of the Commonwealth of Puerto Rico, with its principal place of business in San Juan, Puerto Rico.

2.3   That at all times mentioned hereinafter, AIG was and is in the business of insuring various entities, and had issued to Plaintiff PRPA a Commercial Property Insurance Policy number 026-10000643-1 which afforded coverage for damages to its facilities and/or equipment, and for other covered liabilities, expenses and losses.

2.4     At all material times, Codefendant Royal Caribbean International was and still is a corporation organized and existing under the corporate laws of a state or a foreign country, with a principal place of business located at Miami, Florida.

2.5     At all material times, Codefendant Royal Caribbean International was the owner of the vessel M/S Explorer of the Seas.

2.6     At all material times, Codefendant Royal Caribbean International was the operator and/or manager of the vessel M/S Explorer of the Seas.

2.7     At all material times during 2011, the M/S Explorer of the Seas made regular visits to the Port of San Juan during its cruise routes throughout the Caribbean and the vessel would regularly dock at Pier 3 located in the Old San Juan Harbor.

2.8     At all material times, Codefendant Carnival Corporation & PLC, was and still is a corporation organized and existing under the corporate laws of a state or a foreign country, with a principal place of business located at Miami, Florida.

2.9     At all material times, Codefendant Carnival Corporation & PLC, was and is the owner of the cruise ship Carnival Miracle.

2.10    At all material times and upon information and belief, Codefendant Carnival Corporation & PLC was the operator and/or manager of the cruise ship Carnival Miracle.

2.11 At all material times during 2011, the Carnival Miracle made regular visits to the Port of San Juan during its cruise routes throughout the

Caribbean and the vessel would regularly dock at Pier 4 located in the San Juan Harbor.

2.12  At all material times, Continental Shipping, Inc., upon information and belief is a corporation organized and existing in accordance with the laws of the Commonwealth of Puerto Rico, with its principal place of business in San Juan, Puerto Rico.

2.13  At all material times, Continental Shipping, Inc. provided docking and undocking services to the MS Explorer of the Seas and Carnival Miracle respectively when each of the cruise ships visited the Port of San Juan.

2.14  At all material times, Codefendant ASSURANSFÖRENING GARD, hereinafter GARD, was and still is a corporation believed to be organized and existing under the corporate laws of Norway, with a principal place of business and head office in Kittelsbuktveien 31, NO- 4836 Arendal, Norway.

2.15  At and during all times herein mentioned, defendant GARD was and still is an insurance company or marine underwriter who issued and maintained in full force and effect, a policy of liability insurance and/or a certificate of entry issued to codefendant Royal Caribbean International and to the vessel MS Explorer of the Seas covering certain marine risks involving the said vessel, including losses or damages occasioned by the vessel's, its owners' and operators' fault or negligence to third persons or property of third persons.

2.16  At and during all times herein mentioned, defendants ABC, DEF, GHI and XYZ Insurance Companies, whose true names are unknown at this time, were and still are one or more liability insurer(s) or underwriter(s) who

had issued and maintained in full force and effect, a policies of liability insurance to the MS Explorer of the Seas, and/or to the *Co*defendant Royal Caribbean International, and/or Carnival Miracle and/or Codefendant Carnival Corporation, Inc. & plc and/or to Continental Shipping and/or to any of the defendants named herein or to be added by way of Amended Complaint covering certain marine and/or property risks including losses or damages occasioned by the vessels, their owners and operators to third persons or the property of third persons. In so doing, Plaintiffs expressly reserve the right to make claims against all insurers herein designated as ABC, DEF, GHI and XYZ Insurance Companies, whose true names are unknown at this time, who have insured the liability of the Defendants for the losses, damages and expenses claimed herein as their interests may ultimately appear, which parties will be properly named as discovery is conducted.

2.17   That at all times material, the fictitious defendants John Doe and Richard Roe, whose true names are unknown at this time, are designated as natural or juridical persons who are or may be held liable to Plaintiffs for the fault or negligence of the Defendants.

### III.   FACTUAL PREDICATES INCIDENT INVOLVING ROYAL CARIBBEAN MS EXPLORER OF THE SEAS:

3.1   Pier No. 3 which is involved in this incident, is located at the Paseo Gilberto Concepcion de Gracias in Old San Juan, Puerto Rico.

3.2     Pier No. 3 which was built in 2004 by Royal Caribbean, is 770 feet long and 90 feet wide, and is able to accommodate two cruise ships at the same time and process approximately 5,000 passengers.

3.3     The PRPA is the owner of Pier No. 3, which is utilized by Royal Caribbean when its ships arrive in Puerto Rico, and other cruise lines can utilize said pier when Royal Caribbean is not using the same.

3.4     Co-defendant Continental Shipping, Inc. provides dry land services to the cruise ships that dock there, including mooring services when ships use Pier No. 3.

3.5     On July 27, 2011, at approximately 2:30 PM, the MS Explorer of the Seas was undocking from Pier 3 when the tail rope grabbed the west aluminum rail and pulled the aluminum catwalk from its place during the undocking maneuvers.

3.6     The pier supervisor at the time informed the PRPA that incidents of this nature had occurred in the past due to the improper handling of the ships ropes by Continental Shipping Employees.

3.7     The occurrence of the aforementioned incident which damaged Pier No. 3 was notified to Mr. Ubinas of Continental Shipping on August 3, 2011, when the MS Explorer of the Seas returned to San Juan.

3.8     Mr. Victor Couverthie, the PRPA's Marine Supervisor at the time, completed an accident report identified as Form AP-84, and the incident was

notified to the Puerto Rico Police Department on August 10, 2011, under grievance number 2011-1-166-3926.

3.9 The incident involving the MS Explorer of the Seas was assigned to Atlantic Adjusters & Appraisers for investigation, and Michael Casillo conducted the investigation and submitted various reports regarding the same.

3.10 Extrajudicial claim letters were notified on November 20, 2011, to Mr. Adam Goldstein, President and CEO of Royal Caribbean International and Mr. Jose Busto, President of Continental Shipping.  Thereafter, on March 3, 2012, additional communications were notified via certified mail to Mr. Adam Goldstein of Royal Caribbean International and Mr. Jose Busto of Continental Shipping.

3.11 On March 19, 2012, yet another claim letter was notified via certified mail, to Mr. Bill Fay who is Royal Caribbean Cruises Ltd.'s Insurance Manager for their risk management department.

3.12 As a result of the aforementioned incident which damaged Pier No. 3, the PRPA submitted a formal claim for the replacement of the damaged pier in the amount of $244,545.75.

3.13 The PRPA's claim was adjusted by Michael Casillo of Atlantic Adjusters and Appraisers in the total amount of $207,735.00 for material, labor and other overhead costs associated with the replacement of the walkway.

3.11 Inasmuch as the PRPA's insurance policy with AIG had a deductible of $50,000.00 which was paid by the PRPA, AIG agreed to honor the

7

payment of $157,735.00 for the replacement of the walkway, and said payment was effectuated in two installments, the initial amount of $94.641.00, and the remaining balance of $63,094.00, both of which upon information and belief were paid sometime between December, 2012 and January, 2013.

    **IV.    FACTUAL PREDICATES INCIDENT INVOLVING CARNIVAL'S CRUISE SHIP MIRACLE:**

    4.1    On Friday, August 5, 2011, the cruise passenger vessel M/V Carnival Miracle was docked on the eastern side of the cruise ship berth known as Pier 4 of the cruise ship facilities at the Port of San Juan, P.R.

    4.2    During the evening hours of August 5, 2011, sometime between 10:00 – 11:00 PM, the cruise ship M/V Carnival Miracle, while undocking from the pier, dragged the walking bridge into the sea.

    4.3    More specifically, the incident occurred as the M/V Carnival Miracle was performing undocking maneuvers at Pier 4, and the aft line became tangled on the walking bridge as it was being pulled into the cruise ship, dragging the walkway into the sea.

    4.4    The following day, to wit, August 6, 2011, Armando Torres of Continental Shipping, who is in charge of the employees that unmoor the ships, telephoned PRPA Supervisor, Victor Courverthie and informed him that the aluminum bridge located at the south end of Pier 4, was missing.

    4.5    Mr. Courverthie of the PRPA, in turn informed then Director of the PRPA, Ismael Garcia, who viewed the video of the undocking maneuvers and observed that the M/V Carnival Miracles's ship lines were tied to the bridge

while the ship was undocking, and as she left the Pier dragged the bridge into the sea.

4.6   The aforementioned incident was reported by the PRPA to the Puerto Rico Police Department, Precinct 166, and Officer Mangual, Badge Number 19759, arrived at the pier and received information regarding this incident, which was assigned grievance number Q-2011-1-166-3873. The incident was also reported by the PRPA to Continental Shipping, which is the entity in charge of unmooring the ship.

4.7   The incident involving the M/V Carnival Miracle was assigned to Atlantic Adjusters & Appraisers for investigation, and Michael Casillo conducted the investigation and submitted various reports regarding the same.

4.8   Extrajudicial claim letters were notified on November 20, 2011, to Mr. Gerry Cahill, President of Carnival Cruise Lines and Mr. Jose Busto, President of Continental Shipping.  Thereafter, Carnival Cruise Lines undertook an investigation of the incident involving the M/V Carnival Miracle, which is the object of the present Complaint. Subsequent communications dated March 19, 2012 and July 3, 2012, were also notified via certified mail to atty. John Mitchell, who is the Director of Maritime Claims for Carnival Cruise Lines.

4.9   As a result of the aforementioned incident which damaged Pier 4, the PRPA submitted a formal claim for the replacement of the south walkway in the amount of $225,487.80.

4.10 The PRPA's claim was adjusted by Michael Casillo of Atlantic Adjusters and Appraisers in the total amount of $154,058.00 for material, labor and other overhead costs associated with the replacement of the walkway.

4.11 Inasmuch as the PRPA's insurance policy with AIG had a deductible of $50,000.00 which was paid by the PRPA, AIG agreed to honor the payment of $104,058.00 for the replacement of the walkway, and said payment was effectuated in two installments, the initial amount of $62,343.80, and the remaining balance of $41,623.20, both of which upon information and belief were paid sometime between December, 2012 and January, 2013.

### V.  CLAIM FOR DAMAGES &RELIEF:

5.1   The amounts paid by PRPA and the losses, damages and expenses paid by AIG to PRPA for the damages to its piers, to wit, Pier 3 and Pier 4, and/or any additional damages claimed herein are due to the fault, negligence and/or breach of the various Defendants.

5.2   Royal Caribbean International, its insurer[s], GARD and/or any of the fictitious insurers identified herein, Continental Shipping, Inc., and its insurer which is identified as a fictitious insurer herein, are responsible for the negligent undocking of the walkway at Pier 3 on July 27, 2011, and as such, are jointly responsible for the reimbursement of $207,735.00, which was the cost of replacing the damaged walkway.

5.3   Carnival Corporation & PLC, its insurer[s], to wit, any of the fictitious insurers identified herein, Continental Shipping, Inc., and its insurer which is identified as a fictitious insurer herein, are responsible for the negligent undocking of the walkway at Pier 4 on August 5, 2011, and as such, are jointly responsible for the reimbursement of $154,058.00, which was the cost of replacing the damaged walkway.

**WHEREFORE**, Plaintiffs request that judgment be entered in PRPA and AIG's favor and against Royal Caribbean International, its insurer GARD, and/or Continental Shipping, Inc., and their respective insurers which are identified with fictitious names herein in the amount of $207,735.00, plus an additional amount for pre-judgment interest, reasonable attorneys fees and costs related to the litigation of the present action; and Plaintiffs request that judgment be entered in PRPA and AIG's favor and against Carnival Corporation & PLC, and/or Continental Shipping, Inc., and their respective insurers which are identified with fictitious names herein in the amount of $154,058.00, plus an additional amount for pre-judgment interest, reasonable attorneys fees and costs related to the litigation of the present action.

I Hereby Certify that on October 22nd, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system to all attorneys of record.

In San Juan, Puerto Rico, on this 22nd day of October, 2013.

*S/Jeannette López de Victoria*
**JEANNETTE LOPEZ DE VICTORIA**
USDC 205101

*S/Héctor F. Oliveras Delgado*
**HÉCTOR F. OLIVERAS DELGADO**
USDC 204412

**PINTO LUGO, OLIVERAS & ORTIZ, PSC**
P.O. Box 9024098
San Juan, PR 00902-4098
Telephone 787-724-8103
Fax 787-724-8152
E-mail: hoeman1959@live.com